AO 72A
(Rev. 8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
2012 AUG 23 AM 9:59
CLERK_____
SO. DIST. OF GA.

ERIC WATKINS,

    Plaintiff,

v.                                 CIVIL ACTION NO.: CV212-050

ANTHONY HAYNES; RAYMOND
HOLT; ROBUTA M. TRUMAN;
and HARRELL WATTS,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Eric Watkins ("Plaintiff"), who was formerly incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a cause of action pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), contesting certain conditions of his confinement. Defendants filed a Motion to Dismiss, to which Plaintiff responded. For the reasons which follow, Defendants' Motion should be **DENIED**.

## STATEMENT OF THE CASE

Plaintiff contends that Defendants Haynes, R. E. Holt, Robuta Truman, and Harrell Watts violated his First Amendment right to practice his religion by denying him the meals he needed to eat as part of his Rastafarian beliefs. Plaintiff also contends that members of other faiths, such as Judaism and Islam, were allowed to eat a religiously-based diet but Plaintiff was not.

Defendants assert that Plaintiff's Complaint is barred by the applicable statute of limitations period. Defendants also assert that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Under a Rule 12(b) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

## DISCUSSION AND CITATION TO AUTHORITY

### I. Statute of Limitations

Defendants assert that Plaintiff's Complaint should be dismissed, as it was not filed within the applicable statute of limitations period. According to Defendants, the

statute of limitations for this cause of action began to run in October 2009. Defendants allege that the statute of limitations period expired on or about October 2011. Defendants also allege that Plaintiff's Complaint, which was filed on March 8, 2012, was filed more than four (4) months after the expiration of the applicable statute of limitations period and is time-barred.

Plaintiff responds that, even though the events giving rise to his Complaint occurred in October 2009, his March 8, 2012, Complaint was timely filed. Plaintiff contends that the statute of limitations period did not begin to run until after he exhausted his administrative remedies. Plaintiff asserts that he concluded his administrative remedy process on May 7, 2010, which is the date he received the final rejection of his appeal.

The statute of limitations applicable to 42 U.S.C. § 1983 actions applies to Bivens claims. Walker v. United States, 196 F. App'x 774, 776 (11th Cir. 2006). Constitutional claims brought pursuant to section Bivens "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the [Bivens] action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Georgia law does not allow tolling of the statute of limitations based on a litigant's incarceration status. O.C.G.A. § 9-3-90(b). Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action

3

are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." "The plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (alteration in original) (citation omitted). "This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court." Id. In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

"The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, an inmate is required to seek an informal resolution of an issue. 28 C.F.R. § 542.13(a). If

4

an informal resolution cannot be had, the inmate can file a grievance with the Warden ("BP-9"), and the Warden has 20 days to respond. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may file an appeal with the Regional Director ("BP-10"). 28 C.F.R. § 542.15(a). Finally, if the inmate is not satisfied with the Regional Director's response, he can file an appeal with the General Counsel for the Federal Bureau of Prisons ("BP-11") as the final administrative appeal. Id.

In Leal, the Eleventh Circuit "decline[d] to decide in the first instance the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations." 254 F.3d at 1280. While the undersigned recognizes that Georgia law does not permit tolling, the undersigned concludes that tolling is the proper course in this case. The applicable statute of limitations period was tolled while Plaintiff pursued his administrative remedies, which was a prerequisite to filing suit while he was imprisoned. Plaintiff was a prisoner in October 2009, until his release from custody on June 7, 2010, and he had the according duty to exhaust his administrative remedies before he could file a cause of action in federal court. Even though the Eleventh Circuit has not addressed this issue directly, other Courts of Appeals agree. Nickolich v. Rowe, 299 F. App'x 725, 725-26 (9th Cir. 2008) (finding that, given California's two-year statute of limitations, a state prisoner's § 1983 deliberate indifference claim was not barred by the statute of limitations, where the inmate commenced his prison grievance process immediately after his claim accrued and filed a complaint within two years of completing the mandatory grievance process); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (holding that a federal court relying on the Illinois statute of limitations in

AO 72A
(Rev. 8/82)

a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (concluding that tolling is appropriate while prisoner completes mandatory exhaustion requirements); Harris v. Hegmann, 198 F.3d 153, 157-59 (5th Cir. 1999) (same); see also, Quilling v. Humphries, No. 4:10cv404-WS, 2010 WL 4783031, at *1 (N.D. Fla. Nov. 17, 2010) (referring a case back to the magistrate judge because it could not be determined that the statute of limitations necessarily barred the plaintiff's claims); and Baldwin v. Benjamin, No. 5:09-CV-372(CAR), 2010 WL 1654937 (M.D. Ga. Apr. 23, 2010) (recognizing that the Eleventh Circuit has not adopted a rule regarding the effect of exhaustion on tolling, but noting that the exhaustion requirement may operate to toll the statute of limitations).

Plaintiff was attempting to exhaust his administrative remedies as late as May 7, 2010 (Doc. No. 23-1, p. 8), and thus, the applicable statute of limitations period began to run on that date.[1] Plaintiff had until on or before May 7, 2012, to file a timely Complaint in this Court. Plaintiff's Complaint, which was filed on March 8, 2012, was filed in a timely manner. This portion of Defendants' Motion should be denied.

II. **Qualified Immunity**

Defendants contend that Plaintiff's Complaint is subject to dismissal because they are entitled to qualified immunity. Defendants assert that Plaintiff's Complaint fails to allege a plausible First or Fifth Amendment claim.

---

[1] The undersigned recognizes that Plaintiff was not a "prisoner" within the meaning of the Prisoner Litigation Reform Act ("PLRA") when he filed suit. 28 U.S.C. § 1915A(c). However, Plaintiff was a prisoner at the time of the alleged events giving rise to this cause of action, which is determinative of the application of the PLRA and its attendant exhaustion requirements.

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Government officials must first prove that they were acting within their discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n. 17 (11th Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)[2]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

### A. First Amendment

Defendants aver that Plaintiff's requests for a non-flesh diet were denied based on Bureau of Prisons' ("BOP") Program Statement 4700.06. The purpose of this Program Statement, according to Defendants, is standardization of the food services operations within the BOP. Defendants assert that this Program Statement has a valid,

---

[2] In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

7

rational connection to legitimate governmental interests—budgetary constraints and the security and orderly running of institutions. Defendants also assert that this Program Statement specifically provides for a no-flesh option at the noon and evening meals whenever a main entrée containing flesh is offered. Defendants further assert that this Program Statement provides a "standardized policy regarding religious dietary programs." (Doc. No. 23, p. 9). Finally, Defendants assert that this Program Statement is not an exaggerated response to prison concerns at issue.

Plaintiff contends that his religion has strict dietary requirements, including eating non-flesh foods and non-contamination from any flesh foods or containers and utensils used to prepare and serve flesh foods. Plaintiff alleges that the BOP's commonfare religious dietary program was inconsistent with his religious dietary beliefs, as most of the non-flesh foods were cooled and served in the same containers as flesh foods. According to Plaintiff, his religion teaches that all flesh foods are unclean and cannot be used for human consumption to sustain and maintain a healthy body and life. Plaintiff maintains that all Defendants had the authority and obligation to ensure that he received a diet consistent with his religious beliefs. Plaintiff avers that there were no other alternatives made available to him. Plaintiff also avers that Defendants have not answered the question of what impact accommodating the mandates of his religion would have had on prison resources. Plaintiff states that he is not challenging the Program Statement Defendants cite.

The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Prisoners retain their First Amendment

8

rights, including rights under the free exercise of religion clause; however, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). Deference is given to prison officials, and, as a result, courts employ a "reasonableness" test to determine whether a regulation infringes constitutional rights. Id. The Supreme Court has outlined four factors to be considered in determining the reasonableness of a regulation: (1) "whether the regulation has a valid, rational connection to a legitimate governmental interest;" (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are ready alternatives to the regulation." Turner v. Safley, 482 U.S. 78, 89-91 (1987). The fourth factor asks whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." Overton v. Bazzetta, 539 U.S. 126, 136 (2003) (italics in original).

Plaintiff has made sufficient, plausible allegations that Defendants violated his First Amendment right to free exercise of religion. While Defendants set forth compelling arguments in support of their entitlement to dismissal of Plaintiff's First Amendment claim, those arguments would be more appropriately addressed in a motion for summary judgment, which would allow the parties a full and fair opportunity to present evidence in support of their respective positions. The Court would then have

9

the opportunity to give proper consideration to the Turner factors. This portion of Defendants' Motion should be denied.

B.  **Fifth Amendment**

Defendants assert that Plaintiff has not alleged that any of them engaged in intentional discrimination, only that Jewish and Muslim inmates were provided with religious diets while Rastafarians (of which Plaintiff is a member) were not.

Plaintiff states that he alleged in his Complaint that Defendants willfully violated his Fifth Amendment right to equal protection when Defendants denied his requests for a diet consistent with his religious beliefs while affording diets to inmates of other religions consistent with their religious beliefs. Plaintiff contends that he was similarly-situated with Muslim and Jewish inmates, and Defendants arbitrarily treated him differently.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the [government] engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318-19 (11th Cir. 2006) (internal citation omitted). The equal protection clause prohibits only intentional discrimination. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

In his Complaint, Plaintiff stated he repeatedly informed Defendants from the time of his arrival at the Jesup facility until his release that the commonfare religious dietary program did not meet his religious dietary requirements, and Defendants willfully denied his requests for dietary provisions which met his religious dietary beliefs. (Doc.

No. 1, p. 9). Plaintiff also stated that Muslim and Jewish inmates were provided with diets consistent with their religious beliefs, but Plaintiff, a Rastafarian, was not. (Id. at p. 5). Based on Plaintiff's assertions, it is at least plausible that Defendants intentionally discriminated against him on the basis of his religious beliefs and practices.

The undersigned notes Defendants' citation to Muhammed v. Sapp, 388 F. App'x 892 (11th Cir. 2010), as support for their assertion that Plaintiff's Fifth Amendment claims should be dismissed. As counsel is undoubtedly aware, Muhammed involved the Eleventh Circuit Court of Appeals' affirmation of a district court's disposition of a summary judgment motion. 388 F. App'x at 892. Summary judgment and Rule 12(b) dismissals involve different standards and procedural postures. This portion of Defendants' Motion would be more appropriately addressed in a summary judgment motion and should be denied.

### C. Reliance on Policy

Defendants contend that none of them participated in the creation of the Policy Statement at issue. As a result, Defendants assert, they relied on this Policy Statement in good faith and cannot be held liable for any alleged constitutional violation.

Plaintiff responds that he does not challenge the Policy Statement, but, even if he did, Defendants' actions were not objectively reasonable. Plaintiff states that this Policy Statement did not allow Defendants to deny his requests for a diet consistent with his religious beliefs.

The reasonableness (or lack thereof) of Defendants' actions cannot be determined at this time. Once again, Defendants present the Court with argument more

11

appropriately made in a motion for summary judgment, after discovery has been completed. This portion of Defendants' Motion should be denied.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 25th day of August, 2012.

*/s/ James E. Graham*
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)