# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| ERIC WATKINS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 212-050 |
| | * | |
| ANTHONY HAYNES, | * | |
| RAYMOND HOLT, | * | |
| ROBUTA M. TRUMAN, and | * | |
| HARRELL WATTS, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court are the parties' Objections to the Magistrate Judge's Report and Recommendation. See Dkt. Nos. 34, 37. After careful consideration and an independent and de novo review of the record, the Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation. See Dkt. No. 32. Defendants' Objections to the Magistrate Judge's Report and Recommendation (Dkt. No. 37) are **SUSTAINED IN PART,** and Defendants' Motion to Dismiss (Dkt. No. 23) is **GRANTED.**

1

## I.   INTRODUCTION

This action is predicated on the alleged violation of Plaintiff's First and Fifth Amendment rights.  See Dkt. No. 1. Specifically, Plaintiff contends that Defendants denied Plaintiff meals that comported with his religious beliefs while he was incarcerated at the Federal Correction Institute in Jesup, Georgia.  Id.  Plaintiff further contends that members of other religious faiths were provided meals that comported with their religious beliefs.  Id.

Defendants moved to dismiss Plaintiff's Complaint.  See Dkt. No. 23.  Plaintiff responded to Defendant's motion.  See Dkt. No. 28.  The Magistrate Judge then reported his recommendation to deny Defendants' motion.  See Dkt. No. 32. Both parties objected to the Report and Recommendation.  See Dkt. Nos. 34, 37, 40.  This Court conducted an independent and de novo review.

## II.   LEGAL STANDARD

In considering a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must "construe[] the complaint in the light most favorable to the plaintiff and accept[] all well-pled facts

2

alleged . . . in the complaint as true." Sinaltrainal v. Coca-
Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).  To survive a
motion to dismiss for failure to state a claim under
Rule 12(b)(6), a complaint need not contain "detailed factual
allegations" but must include enough facts to raise a right to
relief above the "speculative level." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007).  The complaint must allege
"enough facts to state a claim to relief that is plausible on
its face" meaning that the factual content "allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Speaker v. U.S. Dep't of Health &
Human Servs., 623 F.3d 1371, 1380 (11th Cir. 2010).

"A complaint is subject to dismissal under Rule 12(b)(6)
when its allegations—on their face—show that an affirmative
defense bars recovery on the claim." Marsh v. Butler Cnty.,
Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc) (citing
Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th
Cir. 1984), vacated on petition for reh'g, reinstated by
764 F.2d 1400 (11th Cir. 1985)).

Because Plaintiff is proceeding pro se, this Court
liberally construes his pleadings. See Bingham v. Thomas, 654
F.3d 1171, 1175 (11th Cir. 2011) (per curiam) ("Pro se pleadings

3

AO 72A
(Rev. 8/82)

are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed." (citing <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)) (internal quotation marks omitted)).

## III. DISCUSSION

Defendants' Motion to Dismiss is predicated on two grounds: (1) Plaintiff's Complaint is barred by the applicable statute of limitations, and (2) Defendants are entitled to qualified immunity.

### A. <u>Statute of Limitations</u>

Defendants assert that Plaintiff's Complaint is barred by the applicable statute of limitations. <u>See</u> Dkt. No. 23. Plaintiff responds that, if the limitations period is properly tolled, his claim is timely. <u>See</u> Dkt. No. 28. The Magistrate Judge recommended that Defendants' motion be denied, reasoning that the statute of limitations was equitably tolled while Plaintiff pursued his administrative appeal. <u>See</u> Dkt. No. 32, at 5-6. For the reasons stated below, Defendants' Motion to Dismiss Plaintiff's claims as untimely is **DENIED**.

4

1.   Legal Standard

Plaintiff's claims contest certain conditions of his confinement pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Dkt. No. 1, at 3.

a. Limitations Period

The statute of limitations for Bivens claims is the statute of limitations applicable to 42 U.S.C. § 1983 actions.  Walker v. United States, 196 F. App'x 774, 776 (11th Cir. 2006). Because 42 U.S.C. § 1983 does not contain a limitations period, federal courts "borrow" the applicable state's statute of limitations for personal injury actions.  Wallace v. Kato, 549 U.S. 384, 387 (2007) ("[T]he length of the statute of limitations [for § 1983 actions] is that which the State provides for personal-injury torts.").  Plaintiff brought his claim in Georgia, where the governing limitations period for personal injury claims is two (2) years.  O.C.G.A. § 9-3-33 ("Actions for injuries to the person shall be brought within two years after the right of action accrues . . . ."); Interial v Chippi, 427 F. App'x 842, 843 (11th Cir. 2011).

5

b. Accrual

A statute of limitations begins to run when a cause of
action accrues.  Although the applicable statute of limitations
of a § 1983 action is determined by state law, "the accrual date
. . . is a question of federal law that is <u>not</u> resolved by
reference to state law."  <u>Wallace</u>, 549 U.S. at 388; <u>see also</u>
<u>Mullinax v. McElhenney</u>, 817 F.2d 711, 716 (11th Cir. 1987).
Section 1983 and <u>Bivens</u> claims "accrue[]──and the statute of
limitations begins to run──when the facts which would support a
cause of action are apparent or should be apparent to a person
with a reasonably prudent regard for his rights."  <u>Hafez v.</u>
<u>Madison</u>, 348 F. App'x 465, 467 (11th Cir. 2009) (citation and
internal quotation marks omitted); <u>see also</u> <u>Walker</u>, 196 F. App'x
at 776 ("A cause of action accrues for purposes of the statute
of limitations in § 1983 and <u>Bivens</u> cases when the plaintiff
knows or has reason to know of an injury and who has inflicted
it." (citing <u>Kelly v. Serna</u>, 87 F.3d 1235, 1238-39 (11th Cir.
1996))).

c. Tolling

For <u>Bivens</u> actions, state law determines tolling of the
limitations period.  See <u>Wallace</u>, 549 U.S. at 394 ("We have

6

generally referred to state law for tolling rules, just as we have for the length of statutes of limitations." (citations omitted)); Salas v. Pierce, 297 F. App'x 874, 877 (11th Cir. 2008) ("[I]n regards to whether the court should have tolled the statute of limitations for [the] § 1983 action, state law generally determines tolling rules." (citation omitted)).  Under Georgia law, the plaintiff bears the burden of demonstrating that the statute of limitations should be tolled.  See McClure v. Raper, 463 S.E.2d 125 (Ga. 1995).

   2.   Factual Background

   On July 24, 2001, Plaintiff was convicted by a jury for drug violations.  Dkt. No. 1, at 3-4.  He was sentenced to 121 months imprisonment.  Id. at 4.  In October of 2009, Plaintiff was transferred to Jesup Federal Correctional Institution ("Jesup FCI").  Id.

   After his transfer to Jesup FCI, Plaintiff "quickly discovered" that the food provided at Jesup FCI was inconsistent with his religious dietary beliefs.  Id. at 7.  Plaintiff complained about the deficiencies of this food from October 2009 until his release in June 2010.  Id.

7

Specifically, Plaintiff sought administrative remedies from the appropriate personnel at Jesup FCI.  The timeline of Plaintiff's pursuit of administrative remedies is as follows: On November 8, 2009, Plaintiff initiated the administrative remedy process by submitting an administrative remedy request, BP-9, to Jesup FCI's warden.  Id. at 11.  On December 1, 2009, the warden responded.  Id.  On December 11, 2009, Plaintiff submitted an administrative appeal, BP-10, to the Regional Director's Office.  Dkt. No. 23 Ex. A.[1]  On December 21, 2009, the regional director responded.  Id. at 11-12.  On January 10, 2010, Plaintiff submitted a final administrative appeal, BP-11, to the Board of Prison's Central Office.  Id. at 12.  On May 7, 2010, the Central Office responded.  Id.  Plaintiff was dissatisfied with each response to his administrative complaint. See Dkt. No. 1.

On June 7, 2012, the Bureau of Prisons released Plaintiff from custody.  Id. at 4.  On March 5, 2012, Plaintiff brought this action.  See Dkt. No. 1.

---

[1] This date is provided for completeness.  It is not critical to the Court's analysis.  Plaintiff's Complaint omits the date of this appeal.  Defendant's motion to dismiss includes a copy of Plaintiff's handwritten appeal. Plaintiff did not object to its accuracy.  Thus, this fact is both immaterial and undisputed.

8

3.   Application

Plaintiff alleges violations of his constitutional rights while incarcerated in Georgia at Jesup FCI.  Specifically, Plaintiff asserts that Defendants "willfully violate[d] Plaintiff's [First and Fifth Amendment rights] and discriminated against him when they directly and indirectly denied Plaintiff's request for a religious diet consistent with his religious dietary belief."  Id. at 5.

a. Limitations Period

Plaintiff's personal injury action is subject to Georgia's two-year statute of limitation.  See supra Part III.A.1.a. Therefore, Plaintiff's claim is barred unless it accrued after March 5, 2010 (i.e. two (2) years prior to the filing of this suit on March 5, 2012) or was tolled such that the two-year limitations period is satisfied.

b. Accrual

i.   Knowledge of Injury's Existence and Cause

Plaintiff's cause of action accrued when the facts supporting the action were apparent.  See supra Part III.A.1.b. Plaintiff and Defendant contend that the cause of action accrued

9

in October 2009, when Plaintiff discovered that the food provided by FCI Jesup was incompatible with his religious belief. See Dkt. Nos. 28, at 3; 23, at 3-4. However, Plaintiff's claim is that Defendants—in their individual capacities[2]— willfully violated Plaintiff's rights "when they directly and indirectly denied Plaintiff's request for a religious diet consistent with his religious dietary belief." Dkt. No. 1, at 5. Thus, Plaintiff's claim depends upon the actions of each individual Defendant.

Accrual occurs when a plaintiff knows both the existence and the cause of an injury. See supra Part III.A.1.b; Fisher v. Office of State Att'y 13th Jud. Cir. Fla., 162 F. App'x 937, 942 (11th Cir. 2006) ("Plaintiffs must know or have reason to know that they were injured[] and must be aware or should be aware of who inflicted the injury." (citation omitted)). Therefore, the action accrued against each individual Defendant when Plaintiff became aware of that Defendant's individual actions. More specifically, the cause of action against each Defendant accrued

---

[2] Plaintiff's claims against the Defendants in their official capacities were dismissed by the Court. See Dkt. No. 13 (adopting the Magistrate Judge's Report and Recommendation). Therefore, Plaintiff's remaining claims are against the Defendants in their individual capacities.

10

when Plaintiff received the administrative response from that Defendant. See, e.g., Chardon v. Fernandez, 454 U.S. 6, 8 (1981) ("[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." (emphasis in original; citation omitted)).[3]  As such, Plaintiff's claim against Defendant Haynes accrued when Plaintiff received the administrative response from Defendant Haynes on December 1, 2009.  Dkt. No. 1, at 11-12; Dkt. No. 23 Ex. A.  Similarly, Plaintiff's claim as to Defendant Holt accrued when his response was received on December 21, 2009. Id.  Finally, Plaintiff's claims as to Defendants Truman and Watts accrued when their response was received on May 7, 2010. Id.

> ii. *Continuing Violation Doctrine*

Plaintiff asserts that the continuing violation doctrine applies to his claim.  See Dkt. No. 28, at 3.  The continuing violation doctrine affects the accrual date of a cause of

---

[3] For example, where plaintiffs asserted that their equal protection rights were violated by furthering a pattern and practice of siting landfills in predominantly minority areas, the accrual date of the action was found to be the date on which the government officials voted to choose the specific site at issue.  Even though other actions lay ahead (e.g., receiving a state permit and purchasing the land), the act alleged to be unconstitutional was the vote itself.  Thus, the action accrued on the date of that vote.  Rozar v. Mullis, 85 F.3d 556, 562-63 (11th Cir. 1996).

11

action.  As such, it is governed by federal law.  See supra Part III.A.1.b.

"The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007) (citation omitted).  If the alleged violation involves continuing injury, "the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." Id. (citation omitted).  "The continuing violation doctrine is a narrowly limited exception to the usual rule that statutes of limitations are triggered at the time the alleged discriminatory act occur[s]."  Steele v. City of Port Wentworth, Ga., No. CV405-135, 2008 WL 717813, at *15 (S.D. Ga. Mar. 17, 2008) (footnote omitted).

The Eleventh Circuit focuses on two (2) aspects of an alleged continuing violation.  See id.  First, the Eleventh Circuit notes that "[t]he critical distinction in continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." Robinson, 327 F. App'x

12

at 818 (citations and editorial marks omitted).  Typically,
"non-action" should not be construed as a continuing violation.
Ctr. For Biological Diversity v. Hamilton, 453 F.3d 1331, 1336
(11th Cir. 2006).

Second, the Eleventh Circuit gives considerable weight to a
plaintiff's awareness of his rights and his duty to bring a
timely claim.  See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d
1208, 1222 (11th Cir. 2001) ("The continuing violation doctrine
is premised on the equitable notion that the statute of
limitations ought not to begin to run until facts supportive of
the cause of action are or should be apparent to a reasonably
prudent person similarly situated." (internal quotation marks
and citation omitted)); Steele, 2008 WL 717813, at *16.
Therefore, the continuing violation doctrine is limited in the
Eleventh Circuit "to situations in which a reasonably prudent
plaintiff would have been unable to determine that a violation
had occurred." Hamilton, 453 F.3d at 1335.  "If an event or
series of events should have alerted a reasonable person to act
to assert his or her rights at the time of the violation, the
victim cannot later rely on the continuing violation doctrine .
. . ." Id. (citations omitted).

13

Under the Eleventh Circuit's application of the continuing violation doctrine, there was no continuing violation here. First, Plaintiff claims a one-time violation, not a continuing violation. Specifically, Plaintiff asserts that Defendants' willfully violated his rights "when they directly and indirectly denied [his] request for a religious diet consistent with his religious dietary belief." Dkt. No. 1, at 5. Responding to Plaintiff's administrative remedy request was a single act. The Defendants each acted one time. Their responses were not ongoing. As such, Plaintiff's Complaint does not allege a continuing violation.

Second, Plaintiff was immediately aware of his injury. He "quickly discovered" that Jesup FCI's meals were incompatible with his religious diet. See Dkt. No. 1, at 7. Moreover, he promptly pursued the administrative remedies available to him. See Dkt. No. 1. It cannot be said that a reasonable person in Plaintiff's position would be unaware of the injury resulting from the three (3) administrative denials of his request for relief. In fact, Plaintiff's pursuit of administrative remedies reveals his immediate awareness of the alleged injury. As such, there was no continuing violation, and Plaintiff's cause of action accrued as to Defendant Haynes on December 1, 2009; as to

14

Defendant Holt on December 21, 2009; and as to Defendants Truman and Watts on May 7, 2010.  See supra Part III.A.3.b.i.

    c. Tolling

Plaintiff's claims arose while he was incarcerated at Jesup FCI.  While he remained incarcerated,[4] the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, prevented Plaintiff from bringing suit in federal court unless and until he exhausted his administrative remedies.  See 42 U.S.C. § 1997e(a) (stating that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences.").

---

[4] Plaintiff exhausted his administrative remedies while in prison.  When Plaintiff filed suit in this Court, he was not a "prisoner" within the statutory definition provided in the PLRA.  See 42 U.S.C. § 1997e(h) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").  Therefore, the PLRA does not apply to this case.  The issue is whether the limitations period should be tolled due to Plaintiff's compliance with the PLRA's provisions when they were applicable to his claims.

Because exhaustion of Plaintiff's administrative grievance was a mandatory precondition of filing suit in federal court,[5] Plaintiff asserts that the limitations period should be tolled during the time in which he exhausted his administrative remedies. See Dkt. No 28.

Tolling is governed by state law. See supra Part III.A.1.c. Therefore, Georgia's laws regarding tolling apply. Georgia law does not permit tolling of the limitations period based on a litigant's incarceration status. O.C.G.A. § 9-3-90(b). Therefore, Plaintiff asserts other bases for tolling the limitations period.

Liberally construing Plaintiff's briefs,[6] Plaintiff makes two (2) alternative arguments. First, Georgia law explicitly tolls the statute of limitations whenever a plaintiff attempts to resolve a claim with an administrative body. Second, Plaintiff is entitled to equitable tolling because he was

---

[5] See Leal v. Ga. Dept. of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) ("[T]he plain language of th[e] statute makes exhaustion a precondition to filing an action in federal court." (citation omitted)); Priester v. Rich, 457 F. Supp. 2d 1369, 1373 (S.D. Ga. 2006), aff'd sub nom., Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008) ("Administrative grievance procedures must be exhausted prior to suit.").
[6] As a pro se party, Plaintiff's briefs are liberally construed. See Hernandez v. Charlotte Correction Inst., 394 F. App'x 667, 668 (11th Cir. 2010) (per curiam).

16

prevented from bringing his claims in federal court until he exhausted his administrative remedies.[7]

As discussed more fully below, Georgia has not recognized an "administrative exhaustion" tolling doctrine apart from equitable tolling. However, applying the policies and rationale from Georgia case law, this Court finds that Plaintiff is entitled to equitable tolling of the limitations period for the time in which he was required to pursue administrative remedies.

   i.   *Explicit Tolling*

Plaintiff asserts that Georgia law explicitly tolls the statute of limitations whenever a plaintiff attempts to resolve a claim with an administrative body. However, Georgia has no statutory tolling provisions that address Plaintiff's argument. Moreover, this Court found no Georgia case law explicitly tolling the limitations period when a person exhausts his administrative remedies pursuant to the PLRA. Consequently, the limitations period was not explicitly tolled by Georgia statute or case law.

---

[7] Plaintiff also asserts that the limitations period should be tolled pursuant to the continuing violation doctrine. However, the continuing violation doctrine affects when a cause of action accrues. It does not address whether the limitations period tolls. As such, this argument is addressed in Part III.A.3.b.ii.

17

   *ii.  Equitable Tolling*

   This Court found no clear, controlling precedent from the Supreme Court of Georgia establishing whether the limitations period is equitably tolled while a plaintiff exhausts the PLRA's administrative review process.  However, case law outlining the purposes of limitations periods and establishing equitable tolling rules in other contexts is instructive.

   *Purposes of Limitations Periods.*  "Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights . . . ." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352 (1983) (citations omitted).  Georgia courts repeatedly emphasize the importance of limitations periods with respect to preventing stale claims.  *See, e.g.*, *Craven v. Lowndes Cnty. Hosp. Auth.*, 437 S.E.2d 308, 310 (Ga. 1993) (finding that statute of limitations' "clear purpose is to eliminate stale claims"); *Mullis v. S. Co. Servs., Inc.*, 296 S.E.2d 579, 582 (Ga. 1982) ("[A] traditional purpose of a statute of limitations . . . is to put an end to stale claims which are unlikely to be based upon competent evidence." (citation omitted)); *Wesley Chapel Foot & Ankle Ctr. v. Johnson*, 650 S.E.2d 387, 393 (Ga. Ct. App. 2007) (finding that, if "the initial complaint gives a defendant

18

fair notice of the conduct, transaction, or occurrence called into question," the defendant is protected from "stale claims" by the statute of limitation even if the initial complaint is subsequently amended); Abend v. Klaudt, 531 S.E.2d 722, 726 (Ga. Ct. App. 2000) ("[T]he purpose of the statute of limitations [i]s the elimination of stale claims." (citation omitted)).  In particular, Georgia courts find that limitations periods ensure fair notice to possible defendants and reduce the likelihood of stale evidence.  See, e.g., Antinoro v. Browner, 478 S.E.2d 392, 395 (Ga. Ct. App. 1996) ("[T]he fundamental purpose of the limitation period . . . is to ensure that an adverse party has timely notice of a claim so he can investigate the claim and prepare a defense while the facts are still fresh." (citation omitted)).

Equitable Tolling in Other Contexts.  The Supreme Court of Georgia addressed the issue of equitable tolling in the context of class actions.  See State v. Private Truck Council of Am., 371 S.E.2d 378 (Ga. 1998).  In Private Truck Council, the high court found that—upon filing a class action—the limitations periods for the individual claims of all asserted class members

19

were tolled during the pendency of the action.  Id. at 380

(citing Parker, 462 U.S. 345).[8]  To support its holding, the

court relied on the doctrine of equitable tolling.  Id.

Specifically, the court found that equitable tolling

"permit[ted] class members to rely on the class action to

protect their rights without concern that the statute of

limitations on their individual claims will have run should

class certification ultimately be denied."  Id.

The Georgia Court of Appeals addressed the issue of

equitable tolling in the context of worker's compensation

claims.  See Butler v. Glenn Oak's Turf, Inc., 395 S.E.2d 277

(Ga. Ct. App. 1990).  In Butler, the plaintiff was pursuing a

workers' compensation claim.  Pursuant to Georgia statute, he

was barred from simultaneously pursuing a common law personal

injury claim.  Id. at 279.  There, the appellate court found

that the filing of the workers' compensation claim accomplished

the purposes of the statute of limitations.  Id. at 278.  That

is, filing the workers' compensation claim fulfilled the purpose

---

[8] The Georgia court cited a case from the United States Supreme Court to
support its holding.  However, the class action was brought under the Georgia
class action statute.  Therefore, the court was applying Georgia tolling
rules.  See Private Truck Council, 371 S.E.2d at 380.

"to insure timely notice to an adverse party so that he can assemble a defense when the facts are still fresh."   Id.   The court further found that tolling the limitations period during the pendency of the administrative hearing did not frustrate those purposes.   Id. at 279.   Specifically, the appellate court held that "because [the employee] was legally barred from pursuing her common law claim against [her employer] from the date the [administrative law judge] found she was covered by the [Workers' Compensation Act] . . . until . . . the date [the appellate] court held that [the employee] was not covered by the [Workers' Compensation] Act and reversed the superior court's judgment . . . , the statute of limitation was tolled during that period."   Id. at 280.   The court noted that "[t]o hold otherwise would place [the employee] in an intolerable 'Catch 22' situation and would be inequitable in view of [the employee's] active pursuit of a recovery for her injuries under a mistake of law that was not corrected until the issue was brought before [the appellate] court."   Id. (citation omitted).

Through its holding, the Butler court sought to avoid duplicative procedures—and to relieve burdens on the superior courts and parties—wherein cases would be filed and then mooted whenever an administrative agency determined that it had

AO 72A
(Rev. 8/82)

jurisdiction to grant relief and an appellate court later determined that the agency lacked jurisdiction. Id. at 278-79.

The Georgia Court of Appeals also addressed the issue of equitable tolling in the context of voluntary and non-binding arbitration. See Antinoro v. Browner, 478 S.E.2d 392 (Ga. Ct. App. 1996). In Antinoro, the plaintiff exercised his right—pursuant to the Supreme Court of Georgia's Alternative Fee Dispute ("AFD") program—to arbitrate a fee dispute with his former lawyer. The plaintiff received a favorable award. However, the defendant-lawyer refused to be bound by the arbitration. Therefore, the plaintiff exercised his right under the AFD program to initiate a civil action to get a personal judgment against the lawyer in the amount of the award.

The plaintiff in Antinoro made his arbitration demand before the statute of limitations for any civil action ran. However, he did not bring the civil action to enforce the arbitral award until after the running of the limitations period.

The appellate court held that the plaintiff's "timely filing of a petition to arbitrate under the AFD program prior to the expiration of the four-year statute of limitation applicable to the civil action sought to be arbitrated tolled the statute

22

of limitation during the pendency of the AFD proceedings." Id.
at 395.  In so doing, the court noted that the AFD program
provided the lawyer with requisite notice of the "complaint."
Id.  Consequently, tolling the running of the civil law statute
of limitations "d[id] not frustrate the fundamental purpose of
the limitation period which is to ensure that an adverse party
has timely notice of a claim so he can investigate the claim and
prepare a defense while the facts are still fresh."  Id.  The
court also found that tolling the statute of limitations gave
effect to the AFD program's purpose, which was to resolve
disputes without resort to traditional litigation.  Id.

   *Application to Present Case*.  A common theme of the Georgia
case law cited above is that an earlier proceeding—be it a
class action suit, administrative claim, or arbitration—can
provide a defendant with sufficient notice of the plaintiff's
claim so that he can "prepare a defense while the facts are
fresh."  See id.; Butler, 395 S.E.2d at 278.  These earlier
proceedings fulfill the purposes of the limitations period by
putting defendants on notice of adverse claims and by preventing
plaintiffs from sleeping on their rights.  Moreover, requiring a
plaintiff to file a claim that will be mooted by another dispute
resolution mechanism burdens the parties and the courts.  See

23

<u>Butler</u>, 395 S.E.2d at 278-79.  To avoid this result while still fulfilling the purposes of statutes of limitations, Georgia courts have equitably tolled the running of the statutes while plaintiffs diligently pursue these alternative dispute avenues.

Applying the rationale from the cases above, this Court holds that the statute of limitations was tolled while Plaintiff complied with the PLRA by pursuing possible administrative remedies prior to filing suit.[9]  Like the plaintiff in <u>Butler</u>, Plaintiff was barred from filing suit until he exhausted available administrative remedies.  Any suit filed prior to administrative exhaustion on May 7, 2010, would have been dismissed for failure to comply with the PLRA's exhaustion requirements.  Thus, the reasoning of the court in <u>Butler</u> suggests that Plaintiff is entitled to tolling.

This result is also consistent with the high court's broad holding in <u>Private Truck Council</u>.  Under the reasoning of the court in that case, a plaintiff who is unaware that he is included in the putative class receives the benefit of equitable tolling.  If equitable tolling is warranted where a plaintiff is

_____

[9] The Court notes that this result would likely differ if Plaintiff had not begun the administrative review process prior to the running of the statute of limitations.

24

unaware that others are pursing possible remedies, equitable
tolling is more warranted here——where Plaintiff receives the
benefit of equitable tolling only because he complied with
federal law and pursued his available administrative remedies.

Similar to the reasoning of the court in Antinoro, tolling
the statute here gives effect to the PLRA's purpose, which is to
resolve as many disputes as possible without resort to
traditional litigation.   See Antinoro, 478 S.E.2d at 395.

Defendants advance three (3) arguments against tolling.
First, Defendants assert that the present case is not the type
of case envisioned by the courts as warranting equitable tolling
because Plaintiff had seventeen (17) months after his release
from prison to file suit.   See Dkt. No. 37, at 4-5.   Following
Defendants' argument to its logical conclusion, equitable
tolling is only appropriate if a prisoner's administrative
remedies are unsatisfactorily exhausted shortly before or after
the limitations period expires.   Georgia courts have not limited
equitable tolling in this way.   They have not required a case-
by-case inquiry into the amount of time that a plaintiff had to
file suit after the alternative dispute resolution or
administrative hearing concluded.   Without some suggestion by

25

the Georgia courts that such an inquiry is required, this Court will not undertake one.

Second, Defendants argue that, because Plaintiff was not a prisoner at the that time he filed his Complaint, the PLRA and its exhaustion requirements do not apply. See id. at 2-3. Plaintiff correctly states the law. However, the fact that Plaintiff is no longer subject to the PLRA does not mean that he was not subject to it at one time. It is for that time that the Court finds that the limitations period for Plaintiff's claims was equitably tolled. This Court sees no reason why a plaintiff in prison should receive the benefit of equitable tolling while a plaintiff who is released from prison after exhausting his administrative remedies should not.

Third, Defendants assert that incarceration does not toll Georgia statutes of limitation. See id. at 3-4 (citing Lawson v. Glover 957 F.2d 801, 804 (11th Cir. 1987)). This is true. However, as discussed above, tolling in the present case is not a result of Plaintiff's incarceration. Instead, the limitations period tolled because the PLRA barred Plaintiff's suit until he exhausted his administrative remedies. Accordingly, the statute of limitations was tolled until the final denial of Plaintiff's

26

administrative appeal.  Thus, the limitations period began to run prior to his release from prison.

    d. Conclusion

Plaintiff's cause of action accrued as to Defendant Haynes on December 1, 2009; as to Defendant Holt on December 21, 2009; and as to Defendants Truman and Watts on May 7, 2010.  See supra Part III.A.3.b.  However, the limitations period was equitably tolled while Plaintiff pursued possible administrative remedies pursuant to the PLRA.  See supra Part III.A.3.c.  Plaintiff exhausted the PLRA's mandatory administrative review process on May 7, 2010.  Therefore, Plaintiff had until May 7, 2012, to file suit against Defendants.

Plaintiff filed this action on March 5, 2012.  Dkt. No. 1. Therefore, his claims against all Defendants are timely.[10] Consequently, Defendants' motion to dismiss these claims as untimely is **DENIED**.

---

[10] This Court notes that, even if the limitations period was not equitably tolled, Plaintiff's claims against Defendants Truman and Watts were timely.

B. <u>Qualified Immunity</u>

Plaintiff is a Rastafarian.  He alleges violation of his First Amendment right to the free exercise of his religion.  Specifically, Plaintiff contends that Defendants discriminated against him by refusing his request to receive foods that were uncontaminated by the flesh of animals.  See Dkt. No. 1, at 5.

Further, Plaintiff alleges violation of the Equal Protection Clause of the Fifth Amendment.  Specifically, Plaintiff contends that Defendants denied him meals consistent with his religious beliefs while simultaneously providing meals consistent with the religious beliefs of Jews and Muslims.  See id. at 5-9.

Defendants assert that they are entitled to qualified immunity on both of these claims.  For the reasons stated below, the Court agrees.  Consequently, Defendants' Motion to Dismiss Plaintiff's claims pursuant to Rule 12(b)(6) is **GRANTED.**

1.   Legal Standard

a. General

Federal officials may be sued in their individual capacities for violations of an individual's constitutional

28

rights.   Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971).   Qualified immunity is a defense that protects government officials performing discretionary functions from such suits where their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."   Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).   The purpose of qualified immunity is to allow government officials to perform their discretionary duties without fear of personal liability or harassing litigation.   See Anderson v. Creighton, 483 U.S. 635, 638 (1987).   As such, "all but the plainly incompetent" and those who "knowingly violat[e] the federal law" are protected. Artiga v. Garcia, 316 F. App'x 847, 848 (11th Cir. 2008) (per curiam) (citations omitted).   See also Coffin v. Brandau, 642 F.3d 999, 1017 (11th Cir. 2011) (en banc) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam))).

Because qualified immunity is a defense not only from liability, but also from suit, the court should ascertain the

29

validity of a qualified immunity defense as early in the lawsuit as possible.  Hunter, 502 U.S. at 227 ("[B]ecause [t]he entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal citation omitted)); Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003).

   b. Eleventh Circuit

   The law governing qualified immunity is well-established in the Eleventh Circuit.  To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotation marks and citation omitted).  "A government employee has acted within his or her discretionary authority if objective circumstances show that the challenged actions occurred in the performance of the employee's duties and within the scope of this authority."  Boyce v. Andrew, 510 F.3d 1333, 1341 (11th Cir. 2007) (citation and internal quotations marks omitted).

30

Once the government official shows that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.  See Courson, 939 F.2d at 1487.  The Supreme Court has established a two-part test to determine the applicability of qualified immunity:  the court must determine (1) whether a plaintiff's allegations establish the violation of a constitutional right and (2) whether that right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).  This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 201; see also Randall v. Scott, 610 F.3d 701, 715 (11th Cir. 2010).  The court may exercise its discretion in determining which of the two Saucier prongs to evaluate first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); Randall, 610 F.3d at 715 n.9.

The right in question cannot be a generalized right, like the right to due process.  Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).  It must be clearly established in a "particularized" sense, such that "the contours of the right" are clear enough for a reasonable official in the defendant's

31

position to know that what the official is doing violates that right. Anderson, 483 U.S. at 640.  A right is "clearly established" when it is enunciated by a court of controlling authority in the defendant's jurisdiction in a case sufficiently similar in its facts "that a reasonable officer could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 616-17 (1999).  General statements of the law give "fair and clear warning" only if their application to a specific set of facts is apparent. United States v. Lanier, 520 U.S. 259, 271 (1997).

In the Eleventh Circuit, the law can be "clearly established" for qualified immunity purposes "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826-27 n.4 (11th Cir. 1997) (en banc).  If there is no precedent on point, a right is clearly established only if the law has "earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (per curiam) (citations omitted).

32

2.   Factual Background

Accepting the allegations in Plaintiff's Complaint as true and construing all reasonable inferences in his favor, as is required at this stage of the proceedings, this Court finds that Plaintiff has alleged the following facts.

Plaintiff is a member of the Rastafarian religion.  Dkt. No. 1, at 5.  Part of Plaintiff's Rastafarian belief is that his diet must "contain nonflesh foods that are uncontaminated and not contaminated by any flesh foods or vessels or utensil[s] used to prepare and serve flesh foods."  Id.

Plaintiff was imprisoned after his conviction for drug-related charges.  Id. at 3-4.  In October 2009, Plaintiff was transferred to Jesup FCI.  Id. at 4.  After this transfer, Plaintiff discovered that Jesup FCI's dietary programs did not comport with his religious dietary beliefs.  Id.  Specifically, although Jesup FCI provided nonflesh food options, those options were "cooked and served in the same utensils as its flesh foods and served with the flesh foods in and on the same serving utensil[s]."  Id. at 8.  As such, the method of preparation and serving the nonflesh foods was inconsistent with Plaintiff's religious beliefs.

33

Jesup FCI also provided an alternative religious dietary program.  This program was consistent with the beliefs of Jews and Muslims.  Id. at 8-9.  However, this dietary program was inconsistent with Plaintiff's religious beliefs because it contained meat.  Id.

Plaintiff complained to Defendants that the dietary programs provided at Jesup FCI were inconsistent with his religious dietary beliefs.  Id. at 7-8.  Defendants all denied Plaintiff's request "on the grounds that the [Bureau of Prison's] religious and/or alternative dietary programs were sufficient to meet Plaintiff's dietary needs."  Id. at 9.

### 3.  Application

#### a. Discretionary Authority

Defendants must have acted within the scope of their discretionary authority for qualified immunity to apply.  They did.

Defendants received Plaintiff's request for dietary accommodation through Jesup FCI's administrative remedy process. Id. at 11-12.  They responded to the request in their official capacities.  Plaintiff alleges that these responses were wrongful.  See Dkt. No. 1.

34

It is not disputed that Defendants were authorized to respond to Plaintiff's request; nor is it disputed that Defendants were authorized to exercise discretion in whether to grant the request.   Therefore, the allegedly wrongful acts were within the scope of Defendants' discretionary authority.

### b. Clearly Established Right

Because Defendants acted within the scope of their discretionary authority, this Court must grant them qualified immunity unless Plaintiff can show "that the facts when viewed in the light most favorable to the plaintiff establish a constitutional violation" and "that the illegality of [Defendants'] actions was 'clearly established' at the time of the incident." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009) (citation omitted).   As indicated above, this Court can exercise its sound discretion to decide which prong of the inquiry to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

#### i.   First Amendment Claim

Plaintiff asserts that Defendants violated the First Amendment by denying his request to receive meals consistent with his religious belief. See Dkt. No. 1, at 5.

35

The Court begins its analysis with the second <u>Saucier</u> prong.  That is, in May 2010 (at the latest),[11] would a reasonable prison administrator, when confronted with Plaintiff's request for a Rastafarian dietary accommodation, determine that a clearly established constitutional or statutory right was being violated?  As a matter of law, it is clear that a reasonable prison official would not.

The inquiry into whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Therefore, it is important to frame the issue precisely and not confuse the general with the particular.  As a general matter, in May 2010, a reasonable government official would have known that a prisoner had the right to freely exercise his religion if that exercise did not compromise institutional security and was clearly established.  <u>See, e.g.</u>, <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free

---

[11] <u>See</u> Part III.A.3.b. for a discussion of when each Defendant acted.  May 2010 is the last date of decision from any Defendant.

exercise of religion." (internal citation omitted)).  Moreover, as a general matter, a reasonable government official would have known that this right encompassed the right to a diet consistent with the prisoner's sincere religious beliefs.  See, e.g., Kahane v. Carlson, 527 F.2d 492, 496 (2d Cir. 1975); Swetokos v. Allen, No. 09-10085-CIV, 2010 WL 2721846 (S.D. Fla. June 7, 2010), report and recommendation adopted, No. 09-10085-CIVMARTINEZ, 2010 WL 2730768 (S.D. Fla. July 9, 2010) ("Courts, generally, have found that to deny inmates food that satisfies the dictates of their religion unconstitutionally burdens their right to free exercise of their faith." (string cite omitted)).  However, the precise question relevant to this Court's inquiry is:  Did the law, in May 2010, clearly establish a Rastafarian inmate's right to a particular dietary preparation (i.e., vegetarian meals prepared with utensils and dishes that had never come into contact with animal flesh)?  It did not.

Based on judicial decisions decided before May 2010, a reasonable prison official would know that the Eleventh Circuit had determined that a prison permissibly discharged its constitutional duty to respect the dietary beliefs of religious inmates by offering an alternative, meat-free diet.  More broadly, a reasonable prison official would know that the

37

Eleventh Circuit permitted prison authorities to limit the dietary options available to prisoners in the interests of reducing the costs and burdens entailed in accommodating the smorgasbord of food-related religious beliefs likely to be encountered in a prison population. See, e.g., Linehan v. Crosby, 346 F. App'x 471 (11th Cir. 2009) (per curiam) (finding that prison had compelling governmental interests to support denial of Kosher meals to Seventh-Day Adventist where vegetarian meals were provided); Martinelli v. Dugger, 817 F.2d 1499 (11th Cir. 1987), abrogation recognized by Harris v. Chapman, 97 F.3d 499, 503 (11th Cir. 1996) (applying "least restrictive means" rather than the less stringent "reasonableness" test recognized by the Supreme Court in O'Lone and concluding that prison could deny an inmate's request for a full Kosher diet).[12]

Other federal courts reached similar conclusions. See, e.g., Jova v. Smith, 582 F.3d 410, 417 (2d Cir. 2009) (per curiam) (concluding that the administrative burden justified prison officials' refusal to provide the plaintiff with specific

--------

[12] The Eleventh Circuit underscored this conclusion in July 2010. See Muhammad v. Sapp, 388 F. App'x 892, 897 (11th Cir. 2010) (per curiam) (finding that a prison's refusal to provide the plaintiff with his requested diet was consistent with the Religious Land Use and Institutionalized Persons Act).

38

foods, on specific days of the week, that were prepared by members of the plaintiff's faith); Baranowski v. Hart, 486 F.3d 112, 125-26 (5th Cir. 2007) (holding that budgetary and security concerns justified the decision not to provide Kosher meals to a Jewish inmate); Kind v. Frank, 329 F.3d 979, 981 (8th Cir. 2003) (jail officials entitled to qualified immunity where policy of providing Muslim inmate with pork-free, rather than vegetarian, diet was objectively reasonable); DeHart v. Horn, 227 F.3d 47, 53 (3d Cir. 2000) ("[A] prison's interest in an efficient food system and in avoiding inmate jealousy are legitimate penological concerns . . . ."); Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (noting that courts must balance impingement on right of free exercise of religion against cost of accommodation and whether alternate means by which inmate can practice his religion are available); Kahey v. Jones, 836 F.2d 948, 950 (5th Cir. 1988) (noting that "prisons need not respond to particularized religious dietary requests" where Muslim inmate's religious belief prevented her from eating any food cooked or served in or on utensils which had come into contact with pork or any pork by-product and where fulfilling inmate's particular request would require special food and individualized processing and containers to completely avoid pork contamination); Swetokos

39

v. Allen, No. 09-10085-CIV, 2010 WL 2721846 (S.D. Fla. June 7,

2010), report and recommendation adopted, No. 09-10085-

CIVMARTINEZ, 2010 WL 2730768 (S.D. Fla. July 9, 2010) (The

acknowledged principle that denying inmates food that satisfies

the dictates of their religion unconstitutionally burdens their

right to free exercise of their faith "does not mean that in

making dietary accommodations, governmental interests including

significant administrative concerns and/or monetary costs are

not to be considered." (string cite omitted)); Lewis v. Ryan,

No. 04CV2468JLS(NLS), 2008 WL 1944112, at *31 (S.D. Cal. May 1,

2008) ("[T]o date, the majority of circuit and district courts

that have looked at this specific issue have concluded there is

no such clearly established right to Halal meals, with or

without Halal meat, under the First Amendment's Free Exercise of

Religion Clause, RLUIPA, or the Equal Protection Clause of the

Fourteenth Amendment." (string cite omitted)); Abdul-Malik v.

Goord, No. 96 CIV. 1021(DLC), 1997 WL 83402, at *7-8 (S.D.N.Y.

Feb. 27, 1997) (finding that Muslim inmates' rights were not

violated by the prison's failure to provide Halal meat three

times a week where a "Religious Alternative Menu" was

available); Abdullah v. Fard, 974 F. Supp. 1112, 1118-19 (N.D.

Ohio 1997) (finding no constitutional violation where a Muslim

inmate was provided a "nutritionally adequate alternative" for a meat entrée in lieu of Halal meat); Muslim v. Frame, 854 F. Supp. 1215, 1224 (E.D. Pa. 1994) ("[I]n prison, religious practices are subject to reasonable restrictions to preserve order and safety." (citation omitted)); Benjamin v. Coughlin, 708 F. Supp. 570, 575-76 (S.D.N.Y. 1989) (no constitutional violation where a prison refused to provide a Rastafarian diet, even though Jewish and Muslim prisoners were provided special diets).

In light of this legal precedent, no reasonable prison official would have concluded that Rastafarian inmates had an established right to meals uncontaminated by animal flesh, especially where non-flesh options were provided. Nor would a reasonable prison official have concluded that prison administrators lacked broad discretion in providing dietary alternatives. Consequently, Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim.

### ii. *Fifth Amendment Claim*

Plaintiff also asserts that Defendants violated the Equal Protection Clause of the Fifth Amendment by providing meals consistent with the religious dietary needs of Jewish and Muslim

inmates while not providing meals consistent with his religious dietary beliefs. <u>See</u> Dkt. No. 1, at 8-9.

The Court begins its analysis with the first <u>Saucier</u> prong. That is, taking the facts in the light most favorable to Plaintiff, has Plaintiff established a constitutional violation? He has not.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and that (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." <u>Muhammad v. Sapp</u>, 388 F. App'x 892, 899 (11th Cir. 2010) (per curiam) (citations and internal quotation and editorial marks omitted); <u>see also</u> <u>Schwarz v. City of Treasure Island</u>, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (noting that "the equal protection clause prohibits only intentional discrimination"). Invidious or "purposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." <u>Ashcroft</u>

42

<u>v. Iqbal</u>, 556 U.S. 662, 676-77 (2009) (internal citation and
editorial marks omitted).

Plaintiff alleged only that meals consistent with the
religious dietary needs of Jewish and Muslim inmates were
provided while meals wholly consistent with his Rastafarian
beliefs were not.  Dkt. No. 1, at 8-9.  That allegation is
relevant only to the first requirement of Plaintiff's equal
protection claim.

Plaintiff presented no facts related to the second
requirement of his equal protection claim.  Viewing Plaintiff's
Complaint in the light most favorable to him does not establish
that the decision to serve meals consistent with Judaism and
Islam but not to serve meals consistent with the Rastafarian
faith was the product of intentional discrimination.  <u>See</u> <u>Sapp</u>,
388 F. App'x at 899 (finding that, although a prisoner alleged
that a prison served Kosher meals but not Halal meals, qualified
immunity was appropriate because the prisoner did not provide a
factual basis of invidious discrimination); <u>see also</u> <u>Patel v.</u>
<u>U.S. Bureau of Prisons</u>, 515 F.3d 807, 815-16 (8th Cir. 2008)
(concluding that a prisoner's equal protection claim failed
because he had not shown that the prison's decision to serve

43

Kosher entrees and not Halal entrees was motivated by intentional discrimination).

Plaintiff's Complaint states that Defendants "willfully" violated his Fifth Amendment right. Dkt. No. 1, at 5. However, this bare assertion is insufficient to survive a motion to dismiss. See Iqbal, 556 U.S. 662 (finding pleadings insufficient to survive a motion to dismiss where the plaintiff posited that the defendants "each knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest."); id. at 676 ("[T]he plaintiff must plead and prove that the defendant acted with discriminatory purpose."). Plaintiff's assertion is precisely the type of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" of which the Supreme Court spoke in Iqbal. Id. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Plaintiff did not provide factual allegations to support his legal conclusion that Defendants acted invidiously.

44

Because Plaintiff did not allege any facts related to invidious discrimination, the facts necessary to establish an equal protection claim are not supported by his Complaint. Consequently, there was no constitutional violation, and Defendants are entitled to qualified immunity on Plaintiff's Fifth Amendment claim.

## IV.   CONCLUSION

The Court finds that the statute of limitations tolled during Plaintiff's pursuit of the prison's administrative remedies.  However, Defendants are entitled to qualified immunity.  Consequently, Defendants' Objections to the Report and Recommendation are **SUSTAINED IN PART**.  Dkt. No. 37. Accordingly, Defendants' Motion to Dismiss Plaintiff's claims is **GRANTED**.  Dkt. No. 23.  The Clerk of Court is instructed to enter an appropriate judgment and close the case.


**SO ORDERED**, this 27th day of March, 2013.


LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

45